## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

|  |  |  |
|---|---|---|
| QUINCY L. ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:07-CV-00647-WHA-TFM |
| | ) | |
| BORAL BRICKS INC. and | ) | |
| SCOTT THOMPSON, | ) | |
| | ) | |
| Defendants. | ) | |

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Jack D. Rowe          MO#  22996
LATHROP & GAGE L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri  64108
Telephone:  (816) 292-2000
Telecopier:  (816) 292-2001

Thomas L. Oliver, II
CARR, ALLISON, PUGH, HOWARD,
OLIVER & SISSON, P.C.
100 Vestavia Parkway, Suite 200
Birmingham, Alabama  35216

**Attorneys for Defendants**

# TABLE OF CONTENTS

Introduction...................................................................................................................1

Statement Of Uncontroverted Facts.............................................................................3

   A.   Plaintiff's Employment with Defendant Boral......................................................3

   B.   Facts Demonstrating Plaintiff Was Not Discriminated Against on the
       Basis of His Gender or Race................................................................................4

   C.   Facts Demonstrating Defendant Boral Did Not Discriminate Against
       Plaintiff on the Basis of His Alleged Disability..................................................9

   D.   Facts Demonstrating that Defendant Boral Did Not Violate the Equal Pay Act...............10

Standard For Summary Judgment................................................................................10

Argument......................................................................................................................11

   I.   Defendant Boral is Entitled to Summary Judgment on Plaintiff's
       Title VII Claims of Race and Sex Discrimination.............................................11

       A.   Plaintiff Cannot Establish a Prima Face Case of Discrimination Because He Was
           Not Qualified For an Open Position at the Time of His Discharge and He Cannot
           Present Evidence That Creates an Inference of Intentional Discrimination............12

       B.   Nonetheless, Boral Had Legitimate, Non-Discriminatory Reasons for Its Decisions
           Which Plaintiff Cannot Demonstrate Were Pretext for Discrimination..................14

   II.   Defendants are Entitled to Summary Judgment on Plaintiff's Race
       Discrimination Claim Under Section 1981..........................................................16

       A.   Plaintiff Cannot Make a Submissible Claim of Race Discrimination
           Against Defendant Boral.......................................................................17

       B.   Defendant Scott Thompson Did Not Make the Decision to Terminate Plaintiff's
           Employment With Boral.......................................................................17

   III.   Plaintiff's Alleged ADA Claim is Subject to Summary Dismissal Because
       Plaintiff is Not Disabled, He Cannot Establish a Prima Facie Case and, Regardless,
       Boral Had Legitimate, Non-Discriminatory Reasons for its Actions Which Plaintiff
       Cannot Demonstrate Were Pretext.....................................................................19

   IV.   To the Extent Plaintiff Has Attempted to Allege a Claim Under the Equal Pay Act, it is
       Subject to Summary Dismissal Because Plaintiff Failed to Plead Such a Claim in his
       Judicial Complaint, and, in the Alternative, Because Plaintiff Cannot Establish a Prima
       Facie Case Under the EPA....................................................................21

Conclusion ..................................................................................................................22

Certificate Of Service ................................................................................................23

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| QUINCY L. ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:07-CV-00647-WHA-TFM |
| | ) | |
| BORAL BRICKS INC. and | ) | |
| SCOTT THOMPSON, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Boral Bricks Inc. ("Boral") and Scott Thompson (hereinafter collectively referred to as "Defendants") respectfully submit their Brief in Support of Defendants' Motion for Summary Judgment. In further support, Defendants hereby incorporate their Evidentiary Materials, Exhibits 1-6.

### INTRODUCTION

The present dispute stems from Plaintiff's unsupported allegations that Defendants discriminated against him on the basis of his race, sex and alleged disability. Plaintiff, a former hourly production employee at Boral's Phenix City, Alabama manufacturing facility, was terminated in February 2006 as part of a reduction in force. At the time of the reduction in force, Plaintiff was working as a Shapes Maker in the Special Shapes Department. In early 2006, Boral determined that it needed to cut back and reduce its workforce in the Special Shapes Department due to the declining demand for special shaped brick products. The three employees with the least amount of seniority in the department, including Plaintiff, were then terminated as part of Boral's economic reduction in force.

1

Following his termination, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging unlawful discrimination related to his selection and termination in the reduction in force.  The EEOC investigated Plaintiff's allegations and found them to be without merit and issued a determination to that end.  Plaintiff subsequently filed this action pro se against both Boral and Assistant Plant Manager in Phenix City, Scott Thompson, alleging that he was terminated because of his race and sex in violation of Title VII of the Civil Rights Act, as amended ("Title VII"), and an alleged disability under The Americans With Disabilities Act ("ADA").  In his Complaint, Plaintiff also alleges a violation of the Equal Pay Act ("Act"), and he references 42 U.S.C. § 1981.

Defendant Boral is entitled to judgment as a matter of law as to Plaintiff's claims of sex and race discrimination because Plaintiff cannot establish a prima facie case of discrimination, and, even assuming he could, Plaintiff cannot demonstrate Boral's legitimate, non-discriminatory reasons for its conduct towards Plaintiff were pretext for unlawful discrimination.  In addition, Defendant Scott Thompson is entitled to summary judgment with respect to Plaintiff's Section 1981 claim because the uncontroverted records establishes that Defendant Thompson did not participate in any decision about which Plaintiff complains as the basis for his race discrimination claim.  Furthermore, Plaintiff is not "disabled" within the meaning of the ADA, and, in any event, the facts demonstrate that Defendant Boral's actions towards Plaintiff were not based on any alleged "disability."  Finally, Plaintiff's EPA claim fails because it is based on an alleged pay disparity between himself and his supervisor prior to the reduction in force, who is also male.  Accordingly, Defendants respectfully request that they be granted summary judgment with regard to all of Plaintiff's claims asserted in this matter.

## STATEMENT OF UNCONTROVERTED FACTS

For the purpose of this Motion only, the following facts are uncontroverted:

**A.     Plaintiff's Employment with Defendant Boral**

1.     Plaintiff Quincy Alexander was employed by Boral from June 1997 to February 2006.  (Excerpts from Deposition of Plaintiff Quincy Alexander ("Dep. Pl."), attached as part of Defendants' Evidentiary Materials, Exhibit 1, at 43:2; 70:4-5).

2.     Throughout his employment with Boral, Plaintiff worked in production, hourly-paid positions at Boral's Phenix City, Alabama, manufacturing facility.  (Dep. Pl. at 103:9-13).

3.     Plaintiff was initially hired as a Sweeper in Plant 1 of Boral's Phenix City facility, and he was later assigned to a Transfer Operator position.  (Dep. Pl at 82:5-9; 87:21-23).

4.     In August 1998, Plaintiff bid and transferred to a Stacker position in the Special Shapes Department ("Shapes" or "Shapes Department") in Plant 1.  After working as a Stacker, Plaintiff assumed at times a Lead role in Shapes.  (Dep. Pl. at 89:17-21; 92:11-13).

5.     In November 2004, Boral reduced its work force in Plant 1, and as a result, Plaintiff was given the option and accepted a Stacker position in Plant 3.  (Dep. Pl. at 112:19-23; 113:1-8; 119:13-21).

6.     Plaintiff returned to the Shapes Department in Plant 1 as a Shapes Maker in March 2005.  (Dep. Pl. at 123:23; 124:1-5).

7.     As a Shapes Maker, Plaintiff was responsible for weekly cycle counts and adjustments on the Shapes inventory yard, he was the Shapes counter for the annual inventory, and he entered data in the system.  Plaintiff also served as a back-up Shipper and performed shapes making functions and other tasks as assigned.  (Affidavit of David Hay ("Hay Affidavit"), attached as part of Defendants' Evidentiary Materials, Exhibit 2, at ¶ 5).

**B.**   **Facts Demonstrating Plaintiff Was Not Discriminated Against on the Basis of His Gender or Race**

8.      Due to the declining demand for special shaped brick products, Boral implemented a reduction in force in Plant 1 Shapes in February 2006.  (Hay Affidavit, at ¶ 6; Affidavit of Steve Markovich ("Markovich Affidavit"), attached as part of Defendants' Evidentiary Materials, Exhibit 3, at ¶ 4; Dep. Pl. at 138:9-18).

9.      Steve Markovich (Plant Manager) and David Hay (Regional Human Resources Manager) decided that the three Shapes employees with the least amount of seniority – Rickey Tolliver (Black/Male), Robert Thompson (White/Male) and Plaintiff – would be terminated as part of the reduction in force.  (Hay Affidavit, at ¶¶ 3, 7-8; Markovich Affidavit, at ¶¶ 3, 5-6).

10.     Plaintiff testified that, to his understanding and from prior experience, employees transferred or terminated as a result of reductions in force at Boral's Phenix City facility are selected on the basis of seniority.  (Dep. Pl. at 114:4-12; 116:19-23; 117:1).

11.     Pursuant to Steve Markovich's direction, Defendant Scott Thompson (Assistant Plant Manager) notified the three least senior Shapes employees of the reduction in force on January 9, 2006.  Mr. Thompson informed the three affected employees that they would be terminated effective February 24, 2006.  (Dep. Pl. at 135:4-18; Hay Affidavit, at ¶¶ 8-9; Markovich Affidavit, at ¶ 7; Affidavit of Scott Thompson ("Thompson Affidavit"), attached as part of Defendants' Evidentiary Materials, Exhibit 4, at ¶¶ 3, 4).

12.     Plaintiff's last day of work was February 3, 2006, because Boral allowed him to use three weeks of accrued vacation prior to the effective date of his termination, February 24, 2006.  (Dep. Pl. at 136:7-13; 140:1-23; Hay Affidavit, ¶ 10).

13.     Although Mr. Tolliver was notified of his lay-off, he did not have vacation and continued to work until the effective date of the reduction in force.  During this period, openings

in other departments became available and Mr. Tolliver was retained to work in a variety of temporary assignments. (Hay Affidavit, at ¶ 11).

14.    Prior to his rehire with Boral in November 2005, Mr. Tolliver had been previously employed by Boral for a number of years. (Hay Affidavit, at ¶ 11).

15.    Defendant Scott Thompson did not decide whether the reduction in force in the Shapes Department would occur or which Shapes employees would be terminated as a result of the reduction in force. Although he notified the affected employees of the reduction in force, Mr. Thompson was acting under Mr. Markovich's direction. (Thompson Affidavit, at ¶¶ 4-5; Markovich Affidavit, at ¶ 7; Hay Affidavit, at ¶ 8).

16.    Plaintiff testified that Defendant Scott Thompson notified him and the other Shapes employees of the reduction in force; however, Plaintiff further testified that he does not know who made the ultimate decision with respect to his termination. (Dep. Pl. at 143:12-23; 144:1-18; 215:18-23; 216:1-3; 251:4-11).

17.    Plaintiff believes Defendant Scott Thompson discriminated against him on the basis of his race merely because Mr. Thompson informed Plaintiff of his lay off. (Dep. Pl. at 209:1-22; 240: 18-23; 252:6-8).

18.    Boral posts open full-time production positions on the company's bulletin board for a 48 hour period, and interested Boral employees may apply internally during this time. Employees selected for a reduction in force are also advised of the opportunity to bid on available production positions. (Hay Affidavit, at ¶ 12).

19.    Plaintiff had previously bid on internal jobs with Boral, and he testified that he was aware of and understood Boral's procedure for bidding on vacant positions. (Dep. Pl. at 127:8-23: 128:1-7; 132:17-23; 133:1-7).

20.     Prior to his effective date of termination, Plaintiff was advised of and given the opportunity to bid on open positions at the Phenix City facility.  (Hay Affidavit, at ¶ 13).

21.     On February 23, 2006, David Hay attached a note to Plaintiff's pay stub identifying three jobs which would be posted for bid on February 27-28, 2006.  (Hay Affidavit, at ¶ 13).

22.     After Plaintiff failed to pick up his pay stub, David Hay mailed to Plaintiff's home address both the pay stub and the note advising Plaintiff of the open production positions. (Hay Affidavit, at ¶ 14).

23.     Plaintiff never bid on any of the three open positions.  (Hay Affidavit, at ¶¶ 13, 15).

24.     On March 9, 2006, David Hay called Plaintiff and left a voicemail on Plaintiff's home answering machine informing him of two recently posted positions at the Phenix City plant.  (Hay Affidavit, at ¶ 16).

25.     Plaintiff did not return David Hay's message, nor did Plaintiff bid on either of the vacant positions.  (Hay Affidavit, at ¶ 16).

26.     Plaintiff testified that he did not check for job postings for which he could have submitted bids while visiting the Phenix City plant after his last day of work but before his effective date of termination.  (Dep. Pl. at 158:18-23; 159:1-3; 15-18; 160:15-23).

27.     Plaintiff further testified that he never inquired of any Boral representatives as to open positions at the Phenix City facility.  (Dep. Pl. at 161: 9-13).

28.     After Plaintiff was notified of his lay off, Clyde Davis (Black/Male) moved from his Lead position in Shapes to a Behavioral Safety Training Coordinator position within the Phenix City facility.  (Hay Affidavit, at ¶ 17; Markovich Affidavit, at ¶ 8).

29.     In early February 2006, in order to keep the Shapes Department running smoothly during this transitory period while Boral reduced shapes production, Steve Markovich and David Hay then assigned Angela Curley (White/Female) to cover the Lead position duties.  (Hay Affidavit, at ¶ 18; Markovich Affidavit, at ¶ 9; Thompson Affidavit, at ¶6).

30.     Defendant Scott Thompson did not play a role in the decision to assign Ms. Curley to cover the Lead position duties in Shapes.  (Thompson Affidavit, at ¶ 6).

31.     Ms. Curley previously worked as a Lead in Shapes from October 2001 until July 2003, and then subsequently from July 2004 to 2005.  (Hay Affidavit, at ¶ 18; Markovich Affidavit, at ¶ 9).

32.     The principal Lead duties Ms. Curley assumed in Shapes included shipping shapes, production scheduling, inventory management, mold box inventory and drawings and data entry.  (Hay Affidavit, at ¶ 18).

33.     In addition to her covering the Lead duties in Shapes, Ms. Curley continued to support Boral in numerous capacities outside of Shapes.  Ms. Curley coordinated environmental records and calculations, served as Plant Safety Officer, served as the back-up for payroll administration and performed facility payroll, and facilitated behavior safety training.  In addition, she trained her replacement in her former position as a MRO Specialist in Centralized Maintenance.  (Hay Affidavit, at ¶ 19; Markovich Affidavit, at ¶ 9).

34.     Plaintiff testified that he never performed any of the following functions during his employment with Boral:  payroll administration; behavioral safety training; maintenance; environmental calculations or paperwork; and, plant safety officer duties.  (Dep. Pl. at 170:16-23; 171:1-17).

35.    Plaintiff testified that he does not have personal knowledge of Ms. Curley's job responsibilities with Boral during the transitory period when she covered the Lead duties in Shapes or in any other capacity with the company.  (Dep. Pl. at 115:17-23; 148: 2-20).

36.    In July 2006, Ms. Curley transferred to a customer service position in Gulfport, Mississippi, and there has been no Lead in Shapes since her departure.  (Hay Affidavit, at ¶ 20).

37.    Following his February 2006 termination, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in September 2006.  (Dep. Pl. at 218:1-19; 221:6-13; attached as part of Defendants' Evidentiary Materials, Exhibit 5).

38.    Thereafter, the EEOC issued its Dismissal and Notice of Rights dated April 4, 2007.  (Dep. Pl. at 234:1-20; attached as part of Defendants' Evidentiary Materials, Exhibit 6).

39.    Plaintiff's race discrimination claim is based solely on the following:  he is Black and was terminated as a result of Boral's reduction in force, whereas Ms. Curley is White and was not terminated.  (Dep. Pl. at 205:14-21; 207:9-14; 223:21-23; 224:1-14).

40.    Plaintiff testified that no one ever directed racial comments towards him, or told him he was laid off because of his race.  (Dep. Pl. at 207:3-5; 209:11-16).

41.    The decision to implement a reduction in force in the Shapes Department was based on the decline in demand for special shaped bricks, and Plaintiff's selection in the reduction in force was based solely on his length of service with Boral.  Plaintiff's race played no part in Boral's decisions.  (Hay Affidavit, ¶ 21; Markovich Affidavit, ¶ 10).

42.    Plaintiff's sex discrimination claim is based solely on the following:  he is male and was terminated as a result of Boral's reduction in force, whereas Ms. Curley is female and was not terminated.  (Dep. Pl. at 210:1-13; 223:23; 224:3-14).

8

43. Plaintiff's sex was unrelated to Boral's decision to terminate his employment as part of the reduction in force. Rather, the decision was based on the declining demand of special shaped brick products and Plaintiff's years of service with Boral. (Hay Affidavit, ¶ 21; Markovich Affidavit, at ¶ 10).

**C.  Facts Demonstrating Defendant Boral Did Not Discriminate Against Plaintiff on the Basis of His Alleged Disability**

44. Shortly after starting work with Boral in June 1997, Plaintiff began receiving military disability benefits related to his knees, back and hearing loss. (Dep. Pl. at 21:2-8; 13-17).

45. Plaintiff acknowledges that he had the same physical condition while working for Boral as when he left the military, and therefore Plaintiff's health issues were not a result of his service with Boral. (Dep. Pl. at 111:21-23; 112:1; 225:20-23; 226:1-2).

46. Plaintiff's physical condition never restricted his ability to work in any of the positions he held with Boral. (Dep. Pl. at 36:12-16; 183:8-16; 184:10-20; 227:1; 228:1-4; 246:11-14).

47. Plaintiff never requested an accommodation or asked for special considerations with respect to his physical condition. (Dep. Pl. at 186:20-23; 187: 1-3).

48. No one at Boral told Plaintiff his selection for Boral's reduction in force was related to his alleged disability. (Dep. Pl. at 226:3-6).

49. Plaintiff testified that his search to find a new job after his employment with Boral ended was not restricted to specific jobs which might accommodate his physical condition. (Dep. Pl. at 264: 22-23; 265:1-15).

50. Any alleged disability of Plaintiff was unrelated to his selection in the reduction in force. Plaintiff was discharged as part of Boral's reduction in force solely because of the

decline in demand for special shaped bricks and his years of service with the company.  (Hay Affidavit, ¶ 21; Markovich Affidavit, at ¶ 10).

**D.    Facts Demonstrating that Defendant Boral Did Not Violate the Equal Pay Act**

51.    After Plaintiff returned to Plant 1 Shapes in March 2005, Plaintiff sent an email to Steve Markovich about his rate of pay.  (Dep. Pl. at 187:7-10; 188:21-23; 189:1-5).

52.    Shortly thereafter, Plaintiff attended a meeting with Steve Markovich, Defendant Scott Thompson and Clyde Davis where Plaintiff expressed his belief that he should be getting the same pay as Clyde Davis because Plaintiff believed they were performing the same job. (Dep. Pl. at 196:11-17; 198:2-9).

53.    Plaintiff testified that his claim under the Equal Pay Act arises out of his allegation that he was entitled to the same rate of pay as Clyde Davis, who is a Black male. (Dep. Pl. at 202:1-9; 18-23; 203:1-4; 218:20-23; 219:1-4; 222:3-9)

<u>STANDARD FOR SUMMARY JUDGMENT</u>

Summary judgment shall be granted if the pleadings, depositions and affidavits demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Benson v. Tocco, Inc*, 113 F.3d 1203, 1207 (11th Cir. 1997) (citing *Matsushita Elec. Indust. Co*., 475 U.S. 574, 587 (1986)).  Where, as here, the party moving for summary judgment does not bear the burden of proof at trial, that party must show "there is an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (citations omitted).  *See also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-1116 (11th Cir. 1993).

"In an employment discrimination case, the plaintiff must produce sufficient evidence to support an inference that the defendant-employer based its employment decision on an illegal

criterion." *Benson*, 113 F.3d at 1207 (citations omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "'If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988) (quoting *Liberty Lobby*, 477 U.S. at 249-250). Under these standards, Plaintiff's claims fail and Defendants are entitled to judgment as a matter of law.

## ARGUMENT

**I.    Defendant Boral is Entitled to Summary Judgment on Plaintiff's Title VII Claims of Race and Sex Discrimination.[1]**

The sole basis for Plaintiff's claims is that he was terminated as part of a reduction in force, and Angela Curley, a White female who was not in the Shapes Department at that time, was not terminated. To avoid summary judgment on his race and sex discrimination claims, Plaintiff must first establish a prima facie case of discrimination. *Walker v. Mortham*, 158 F.3d 1777, 1183 (11th Cir. 1998). If Plaintiff establishes a prima facie case, the burden of production shifts to Boral to articulate a legitimate, non-discriminatory reason for the challenged action. *Id.* at 1184. Once Boral articulates such an explanation, the burden reverts to Plaintiff to show the proffered reason is pretextual. *Id.* at 1184-85. More importantly, Plaintiff retains the ultimate burden of persuasion to show intentional discrimination on the part of Boral. *Morykwas v. Wynne*, No. 2:04-cv-872, 2007 U.S. Dist. LEXIS 625, * 7 (M.D. Ala. Jan. 4, 2007) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Boral is entitled to summary

---

[1] Pursuant to the Court's previous Order in this matter, Plaintiff's Title VII claims of race and sex discrimination against individual Defendant Scott Thompson were dismissed with prejudice. (*See* Docket No. 22 – Report and Recommendations dated October 26, 2007, and Docket No. 31 – Court Order dated December 5, 2007).

judgment on Plaintiff's race and sex discrimination claims because he cannot establish a prima facie case of discrimination, and, even assuming he could, Plaintiff cannot demonstrate Boral's legitimate, non-discriminatory reasons for its conduct towards Plaintiff were pretext for unlawful discrimination.

**A.  Plaintiff Cannot Establish a Prima Face Case of Discrimination Because He Was Not Qualified For an Open Position at the Time of His Discharge and He Cannot Present Evidence That Creates an Inference of Intentional Discrimination.**

The Eleventh Circuit has adopted a modified version of the approach set forth in *McDonnell Douglas* for reduction in force cases.  *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990).  In order to establish a prima facie case, Plaintiff must show: (1) that he is a member of a protected class and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position at the time of discharge; and (3) evidence by which a fact finder might reasonably conclude that Boral intended to discriminate on the basis of race or sex in reaching the decision at issue.  *Id.*; *Barnes v. Southwest Forest Idus. Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).  Boral does not dispute that Plaintiff, who is Black, is a member of a protected class and was terminated.  Plaintiff cannot make out a prima facie case, however, for two principal reasons.  First, he was not qualified for any open positions at the time of his termination.  Second, Plaintiff cannot come forward with evidence that creates an inference of intentional discrimination.

Boral acknowledges that Plaintiff was qualified for the Shapes Maker position he held prior to the reduction in force; however, this fact alone is insufficient to satisfy the second prong of Plaintiff's prima facie case.  "Where a particular job position is entirely eliminated for non-discriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not

enough." *Wavde v. Digital Equip. Corp.*, 994 F. Supp. 1433, 1437 (S.D. Fla. 1997) (citing *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1082-83 (11th Cir. 1990)). The uncontroverted record shows that Plaintiff was not qualified to fill any position with Boral that was available at the time he was selected for the reduction in force.

In his deposition, Plaintiff claims that he was qualified for Clyde Davis' former position as the Lead in Plant 1 Shapes, from which Mr. Davis transferred after Plaintiff had worked his last day with Boral. (Dep. Pl. at 146:2-12; 147:1-23; 148:1-20; Statement of Uncontroverted Facts 28 ("SOF")). At the outset, Boral notes that the Lead position was not open at the time Plaintiff was selected for the reduction in force. Regardless, after Mr. Davis' transfer out of Shapes, Steve Markovich and David Hay assigned Angela Curley to cover Mr. Davis' former duties as a Lead. (SOF 29). The "position" which Ms. Curley occupied after February 2006 included more than just covering Lead responsibilities in Shapes. Ms. Curley possessed over two-and-a-half years experience performing the Lead duties, but in this "position" she was also responsible for numerous functions while covering the Lead role in Shapes. (SOF 33). Furthermore, Ms. Curley's service in other capacities outside of the Lead duties required skills she had acquired in former positions with Boral – skills that Plaintiff admits that he did not have. (SOF 33, 34). Plaintiff, for example, was not qualified to perform payroll administration, behavioral safety training, maintenance, environmental calculations or paperwork, or plant safety duties, which were all roles Ms. Curley was serving in addition to the Lead responsibilities. (SOF 33, 34). Because Plaintiff cannot show that he was qualified for the "position" which Ms. Curley assumed in February 2006, he fails to establish the second prong of his prima facie case.

Plaintiff's prima facie case fails for the additional reason that Plaintiff cannot provide evidence from which a reasonable fact finder could conclude that Boral intended to discriminate

against him on the basis of his race or sex in making the decision to terminate his employment. In order to show an inference of discrimination, Plaintiff must show a "nexus" between his termination and race or sex discrimination. *Early*, 907 F.2d at 1083. Here, Plaintiff's sole basis for his claims of race and sex discrimination is that he, a Black male, was terminated as part of the reduction in force, and Ms. Curley, a White female, was not. (SOF 39, 42). Other than his contention that a White, female co-worker was not terminated in the reduction in force, Plaintiff can offer nothing more to show that his termination was motivated by discriminatory reasons. *See Chriss v. Royal Indemnity Co.*, No. 1:05-cv-1817, 2006 U.S. Dist. LEXIS 30383, * 18 (N.D. Ga. Mar. 22, 2006) (former employee failed to establish a prima face case when she offered nothing to support her claim that she was discharged in a reduction in force on the basis of her race except that a White co-worker was not discharged). Finally, the record further undermines Plaintiff's belief that race discrimination played a part in the termination decision because he testified that no one at Boral ever made any racially offensive or derogatory remark towards him during his employment with Boral or with respect to his termination.[2] Accordingly, for the foregoing reasons, Plaintiff has failed to establish a prima face case of race and/or sex discrimination and his Title VII claims are therefore subject to summary dismissal.

**B.    Nonetheless, Boral Had Legitimate, Non-Discriminatory Reasons for Its Decisions Which Plaintiff Cannot Demonstrate Were Pretext for Discrimination**

Even if Plaintiff could establish a prima facie case as to his termination, which Boral denies, he cannot demonstrate that Boral's legitimate explanation for its decision to terminate Plaintiff is pretext for race or sex discrimination. Boral's burden to demonstrate a legitimate, non-discriminatory reason for its decision to terminate Plaintiff is "exceeding light," as Boral

---

[2] Further dispelling any inference of discrimination, Boral notes that Robert Thompson, a White male, was terminated as part of the same reduction in force that affected Plaintiff. (SOF 9).

"need only produce admissible evidence which would allow the trier of fact rationally to

conclude that the employment decision had not been motivated by discriminatory animus."

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997); *Walker v. Nations Bank of*

*Fla.*, 53 F.3d 1548, 1556 (11th Cir. 1995).

Boral has submitted a legitimate, non-discriminatory explanation for Plaintiff's

termination: the Shapes department underwent a reduction in force and a reorganization to

account for the diminishing demand for special shaped brick products, (SOF 8), and employees

terminated at part of the reduction in force were selected solely on the basis of seniority with the

company.  (SOF 9).  Furthermore, Plaintiff was not assigned to cover the Lead duties in Shapes

because the position was not open when Plaintiff was selected for the reduction in force.  (SOF

28, 29).  More significantly, Steve Markovich and David Hay merged Ms. Curley's preexisting

duties with those required by the Lead role during a time when the company was cutting back the

department due to the declining demand for the product, (SOF 29, 33), and it was vital to retain

employees who were multi-faceted and could support Boral in various roles.

Boral having carried its burden of articulating a legitimate, non-discriminatory reason for

its actions, Plaintiff is now required to set forth a genuine issue as to whether Boral's explanation

is pretextual.  To demonstrate pretext, Plaintiff must show Boral's stated reasons are "unworthy

of credence."  *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005); *see*

*also Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (a plaintiff must "come forward

with evidence…sufficient to permit a reasonable fact finder to conclude that the reasons given by

the employer were not the real reasons for the adverse employment decision").  Mere

"conclusory allegations of discrimination, without more, are not sufficient to raise an inference

of pretext or intentional discrimination."  *Young v. General Foods Corp.*, 840 F.2d 825, 830

(11th Cir. 1988). There simply is no evidence of pretext in this case, and thus Plaintiff cannot meet this burden.

As Boral has described, Plaintiff's selection in the reduction in force was based on his years of service with the company. (SOF 9). Plaintiff himself admits that it was Boral's practice to select individuals transferred or terminated in reductions in force on the basis of seniority. (SOF 10). Further belying any notion of race discrimination, Boral again notes that Robert Thompson, who is White, was terminated from the Shapes Department as a result of the same reduction in force that affected Plaintiff. (SOF 9). In addition, Plaintiff testified that no one at Boral ever directed a remark or comment toward him which would indicate that his termination was based on his race or sex. (SOF 40). Finally, Plaintiff cannot demonstrate pretext with respect to the Lead position in Shapes because he testified that he had no personal knowledge of Ms. Curley's job responsibilities with Boral during the transitory period when she covered the Lead duties in addition to various other duties for which Plaintiff was admittedly not qualified. (SOF 34, 35). In short, Boral's articulated legitimate, non-discriminatory reason is not "unworthy of credence," and therefore Plaintiff's race and sex discrimination claims are subject to summary judgment.

## II.     Defendants are Entitled to Summary Judgment on Plaintiff's Race Discrimination Claim Under Section 1981.

In his judicial Complaint reference to 42 U.S.C. § 1981, Plaintiff apparently alleges that both Boral and Defendant Scott Thompson, Assistant Plant Manager in Phenix City, discriminated against him on the basis of his race in violation of Section 1981. As with Plaintiff's Title VII claims, Plaintiff's Section 1981 claim against Boral fails because he cannot establish a prima facie case of unlawful discrimination, and, in any event, Plaintiff cannot demonstrate Boral's legitimate, non-discriminatory reasons for its conduct towards Plaintiff were

pretext for discrimination.  Plaintiff's claim against Defendant Scott Thompson further fails
because Mr. Thompson did not decide to implement the reduction in force, he did not determine
who – including Plaintiff – would be terminated as part of the reduction in force, and he did not
decide who should assume the Lead responsibility in Shapes after Mr. Davis' departure.  (SOF
15, 30).  For these reasons, Mr. Thompson cannot be individually liable under Section 1981.

> ### A.    Plaintiff Cannot Make a Submissible Claim of Race Discrimination Against Defendant Boral.

The same burden-shifting framework set forth above regarding Plaintiff's Title VII
claims of race and sex discrimination also applies to Plaintiff's race discrimination claim under
Section 1981.  *Cooper v. Southern Co.*, 390 F.3d 695, 724-25 (11th Cir. 2005); *Standard v.
A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  For efficiency's sake, Boral will
refrain from restating those standards again, and therefore incorporates its arguments and
authorities set forth in Section I above.

> ### B.    Defendant Scott Thompson Did Not Make the Decision to Terminate Plaintiff's Employment With Boral.

This Court has recognized that "[s]upervisors with the capacity to hire and fire or those
who can recommend such decisions are subject to liability under Section 1981."  *Leige v. Capitol
Chevrolet, Inc.*, 895 F. Supp. 289, 293-94 (M.D. Ala. 1995); *see also Marshall v. Daleville City
Bd. of Educ.*, No. 1:05-cv-386, 2006 U.S. Dist. LEXIS, *35 (M.D. Ala. July 24, 2006)
(recognizing that individuals are subject to Section 1981 liability under certain circumstances –
namely, when an individual defendant decides and implements an adverse employment action).
In this case, Plaintiff cannot show, and it is not so,  that Defendant Scott Thompson played a role
in the decision to terminate Plaintiff as part of Boral's reduction in force, and therefore Mr.
Thompson cannot be individually liable under Section 1981.

Plaintiff's assertions with respect to Mr. Thompson rest on his erroneous belief that Mr. Thompson was the ultimate decision maker behind the elimination of jobs – including Plaintiff's position – in Shapes. (SOF 17). Specifically, Plaintiff testified that Mr. Thompson discriminated against Plaintiff on the basis of his race solely because Mr. Thompson notified Plaintiff of Boral's reduction in force, and consequently, Plaintiff's termination. (SOF 17). The uncontroverted record establishes that Steve Markovich and David Hay decided which Shapes employees would be laid off. (SOF 9). The record refutes any suggestion that Defendant Scott Thompson participated in the decision to implement a reduction in force or to terminate Plaintiff. (SOF 15). Although Defendant Scott Thompson notified Plaintiff and the other Shapes employees of the reduction in force, Plaintiff can provide no evidence to indicate that Mr. Thompson either decided or recommended that Plaintiff be terminated. "Conclusory allegations, speculation, or immaterial factual disputes are not sufficient to avoid summary judgment." *Hornsby v. Three Dollar Café III, Inc.*, No. 1:03-cv-1668, 2005 U.S. Dist. LEXIS, *12 (N.D. Ga. Nov. 30, 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Moreover, Plaintiff contradicts his own testimony and *concedes* that he does not know who made the ultimate decision with respect to his termination. (SOF 16).

To the extent Plaintiff argues that Scott Thompson discriminated against him on the basis of race by selecting Angela Curley to assume the Lead duties in Shapes, such an argument also falls flat. Once again, the record reveals that Steve Markovich and David Hay – not Defendant Scott Thompson – assigned Ms. Curley to cover the duties corresponding to the Lead position. (SOF 29, 30). Plaintiff can offer no evidence to the contrary. Because Plaintiff cannot present evidence in support of his belief that Mr. Thompson was the ultimate decision maker with respect to Plaintiff's termination, his Section 1981 claim against Mr. Thompson cannot stand.

Even if Plaintiff could establish that Defendant Scott Thompson was the decision maker with respect to Plaintiff's selection in the reduction in force, Plaintiff's claim of race discrimination under Section 1981 remains subject to summary dismissal. Again, for efficiency's sake, Defendants will refrain from reciting the Eleventh Circuit law regarding Plaintiff's race discrimination claim under Title VII and Section 1981, and therefore incorporate the arguments and authorities set forth in Sections I and II(A) above.

III.    **Plaintiff's Alleged ADA Claim is Subject to Summary Dismissal Because Plaintiff is Not Disabled, He Cannot Establish a Prima Facie Case and, Regardless, Boral Had Legitimate, Non-Discriminatory Reasons for its Actions Which Plaintiff Cannot Demonstrate Were Pretext.[3]**

Plaintiff appears to argue that Boral discriminated against him by discharging him on the basis of an alleged disability, yet he concedes the following: (1) his alleged physical conditions – relating to his knees, back and hearing loss – predated his employment with Boral; (2) his alleged physical conditions never prohibited his ability to work in any of the positions he held with Boral; (3) he never requested an accommodation or asked for special considerations with respect to his alleged physical conditions; and (4) no one at Boral stated or insinuated that his alleged physical condition influenced his selection for the reduction in force. (SOF 45, 46, 47, 48).

"The ADA prohibits discrimination against a qualified individual with a disability based on that disability when the discrimination involves the . . . termination . . . of that qualified individual." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1327 (11th Cir. 1998). Plaintiff's ADA discrimination claim fails because Plaintiff is not disabled within the meaning of the statute, and regardless, Boral had legitimate, non-discriminatory reasons for terminating

---

[3] Pursuant to the Court's previous Order in this matter, Plaintiff's alleged ADA discrimination claim against individual Defendant Scott Thompson was dismissed with prejudice. (*See* Docket No. 22 – Report and Recommendations dated October 26, 2007, and Docket No. 31 – Court Order dated December 5, 2007).

Plaintiff's employment which Plaintiff cannot demonstrate were a pretext.[4]  A "disability" for purposes of the ADA is a physical or mental impairment that substantially limits one or more of the individual's major life activities.  42 U.S.C. § 12101(2).  Merely proving the existence of a physical impairment is insufficient to prove disability.  *Standard*, 161 F.3d at 1327.  *Id*.  With respect to the major life activity of working, the impairment must significantly restrict an individual's "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person . . .."  *Id*.  Here, the record is devoid of evidence that Plaintiff's alleged physical impairments restricted his ability to work in a class of jobs or broad range of jobs.  Furthermore, Plaintiff himself admits that he was fully capable of performing the various jobs he held and that his alleged physical impairments never restricted his ability to work at Boral.  (SOF 46).  Finally, it bears noting that at no time did Plaintiff request any sort of accommodation – and he so admits, further belying any notion that Plaintiff suffered from a disability under the ADA  (SOF 47).  For all of these reasons, Plaintiff is not disabled within the meaning of the ADA and his claim, therefore, is subject to summary judgment.

Regardless, Plaintiff's alleged ADA claim fails for the additional reason that – as set forth above – Boral had legitimate, non-discriminatory reasons for terminating Plaintiff's employment, and Plaintiff cannot demonstrate that Boral's reasons are pretext for unlawful disability discrimination.  Boral hereby incorporates its arguments and authorities set forth in Section I(B).  Furthermore, Boral notes that the record refutes Plaintiff's unsupported belief that any alleged disability played a part in the termination decision (SOF 50), and even Plaintiff concedes  that no one at Boral indicated that Plaintiff's selection for the reduction in force was

---

[4] Courts in the Eleventh Circuit routinely analyze ADA discriminatory discharge claims under the familiar *McDonnell Douglas* burden-shifting framework discussed above in Section I.  *See Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001).

related to his alleged physical impairments (SOF 48).  For all the foregoing reasons, Boral is

entitled to summary judgment on Plaintiff's alleged ADA discriminatory discharge claim

IV.    **To the Extent Plaintiff Has Attempted to Allege a Claim Under the Equal Pay Act, it is Subject to Summary Dismissal Because Plaintiff Failed to Plead Such a Claim in his Judicial Complaint, and, in the Alternative, Because Plaintiff Cannot Establish a Prima Facie Case Under the EPA.**

At the outset, Boral notes that Plaintiff neither mentions the Equal Pay Act ("EPA") nor

cites to the corresponding statute, 29 U.S.C. § 206(d), in his judicial Complaint.  Plaintiff's

Charge of Discrimination, on the other hand, does reference the EPA.  (*See* Ex. 5).  Thus, Boral

submits, Plaintiff has abandoned any EPA claim in this civil action, and it is therefore subject to

dismissal for two principal reasons.  First, even under Rule 8's liberal pleading standards,

Plaintiff's vague references to his wage and the wages of other unnamed "department heads"

does not amount to a stated claim under the EPA.  That plaintiff is a pro se litigant does not deter

from this conclusion.  As the Court has noted previously in this litigation, "[a]ll litigants, *pro se*

or not, must comply with the Federal Rules of Civil Procedure.  Although the court is required to

liberally construe a *pro se* litigant's pleadings, the court does not have 'license to serve as a de

facto counsel for a party. . . or to rewrite an otherwise deficient pleading in order to sustain an

action'" [*See* Doc. No. 22, at 5, citing *GJR Investments, Inc., v. County of Escambia, Fla.*, 132

F.3d 1359, 1369 (11th Cir. 1998)].  Second, that Plaintiff's judicial Complaint contains

references and citations to several federal statutes – including jurisdictional statutes, Title VII

and Sections 1981 and 1983 – but does not mention the EPA by name or citation – further

bolsters the conclusion that his omission of the EPA was not an oversight deserving of judicial

leniency.

Regardless, Plaintiff's alleged Equal Pay Act claim fails for the additional reason that he

cannot establish a prima facie case.  In his deposition, Plaintiff clarified that his alleged EPA

claim is based on his belief that he was entitled to the same pay rate as Clyde Davis, his Black,

male supervisor.  (SOF 53).  "The prima facie case under the Equal Pay Act requires that an

employee show 'an employer pays different wages to employees of *opposite sexes* for equal

work on jobs the performance of which requires equal skill, effort, and responsibility, and which

are performed under similar conditions.'"  *Waters v. Turner, Wood & Smith*, 874 F.2d 797, 799

(11th Cir. 1989) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)) (emphasis

added).  Plaintiff's alleged claim further fails for the obvious reason that the comparable

employee is male.  Accordingly, for all the foregoing reasons, Plaintiff's EPA claim – to the

extent he has alleged one – is subject to summary dismissal with prejudice.

## CONCLUSION

WHEREFORE, for foregoing reasons, Defendants respectfully request the Court enter

summary judgment in their favor on Plaintiff's Complaint and for their costs and attorneys' fees,

and for such other and further relief as the Court deems necessary and proper in the premises.

Respectfully submitted,

LATHROP & GAGE L.C.

/s/ Jack D. Rowe

Jack D. Rowe          MO#  22996
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri  64108
Telephone:  (816) 292-2000
Telecopier:  (816) 292-2001

CARR, ALLISON, PUGH, HOWARD,
OLIVER & SISSON, P.C.

/s/ Thomas L. Oliver, II

Thomas L. Oliver, II
100 Vestavia Parkway, Suite 200
Birmingham, Alabama  35216

Attorneys for Defendants

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this 10th day of July, 2008, the foregoing Brief was served, by

Certified and first class United States mail, postage prepaid, that same date to:

Quincy L. Alexander
1507 – 8th Place, South
Phenix City, Alabama  36869

Plaintiff Pro Se


_____/s/ Jack D. Rowe_____
An Attorney for Defendants