IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

QUINCY L. ALEXANDER,       )
                                 )
       Plaintiff,          )
                                 )
v.                                   )
                                 )      CASE NO. 3:07-cv-647-WHA-TFM
BORAL BRICK, INC., *et al.*,    )      [wo]
                                 )
       Defendants.       )

## AMENDED REPORT AND RECOMMENDATION
## OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United

States Magistrate Judge for review and submission of a report with recommended findings

of fact and conclusions of law (Doc. 4, filed July 19, 2007).  Pending before the Court are

*Defendants' Motion for Summary Judgment* and supporting documentation (Docs. 35-37,

filed July 10, 2008).  Also pending are *Defendants' Motion to Strike Plaintiff's "Reply*

*Brief."* (Doc. 44, filed August 22, 2008) and Plaintiff's *Objection Reply to Report and*

*Reccommendation [sic] of the Magistrate Judge* (Doc. 48, filed September 25, 2008).[1]  For

good cause, it is the Recommendation of the Magistrate Judge the Motion for Summary

Judgment be granted, the Motion to Strike be denied as moot, and the Motion for

Reconsideration be denied as moot.

---

[1]     The document was construed as a motion for reconsideration on September 30,
2008.  *See* Doc. 50.

# I.   PARTIES

*Pro se* plaintiff, Quincy Alexander ("Alexander" or "Plaintiff") is a resident of Phenix City in Russell County, Alabama, located in the Middle District of Alabama.

Defendant Boral Bricks, Inc. ("Boral Bricks") is a Georgia corporation headquartered in Atlanta.  Defendant Scott Thompson ("Thompson") is the Assistant Plant Manager at Boral Bricks's Phenix City plant and has been sued in his individual capacity.

# II.   JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights), 42 U.S.C. § 2000e-5 (Title VII), 42 U.S.C. § 12111 (Americans with Disabilities Act), 42 U.S.C. § 1981 (Civil Rights Act of 1866, as amended), and 29 U.S.C. § 206 (Equal Pay Act).  The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

# III.   NATURE OF THE CASE, MOTION FOR SUMMARY JUDGMENT, AND MOTION FOR RECONSIDERATION

The underlying facts of this case are necessarily viewed in favor of the nonmovant *pro se* Plaintiff.  Alexander initiated this action on June 29, 2007.  *See* Doc. 1.  In his complaint, Alexander clearly asserts claims pursuant to Title VII, 24 U.S.C. § 2000e-5, the Americans with Disabilities Act, 42 U.S.C. § 12111 ("ADA."), 42 U.S.C. §§ 1981, 1983.  *Id*.  Alexander specifically alleges he was terminated from his position at Boral Bricks and discriminated against due to his race (African American), and gender (male).  From his additional

pleadings, it also appears Alexander attempts to assert a claim under the Equal Pay Act, 29 U.S.C. § 206 ("EPA"). He brings claims against his former employer, Boral Bricks, and his former supervisor, Scott Thompson. All claims against Thompson, with the exception of the § 1981 claim, were dismissed by the Court on December 5, 2007. *See* Doc. 31. Further, Alexander's § 1983 claims against both defendants were also dismissed. *Id*.

The complaint provides minimal details as to the factual basis of his claims. Alexander, a black male, asserts claims related to his termination in January 2006. He worked for Boral Bricks as a Shapes Brick Maker. *See* Doc. 36 at p. 6 ¶ 6.[2] Alexander states Thompson told him he was being laid off because the product was not selling. *See* Doc. 1 at p. 3 ¶ 11. He alleges white and female employees with less seniority were retained and a white female was moved from another department to fill his position. *Id*. Alexander alleges his termination was discriminatory on the basis of race and disability. *Id*. at p. 3 ¶ 13. Alexander also makes a vague reference to the fact he was earning less money than others in similar positions. *Id*. at p. 3 ¶¶ 9-10.

On July 10, 2008, Boral Bricks and Thompson submitted their Motion for Summary Judgment and supporting documentation. *See* Docs. 35, 36, and 37. In the motion, Boral Bricks asserts all the claims against it should be dismissed as there are no material facts at issue because Alexander fails to establish his prima facie cases for his respective claims

---

[2]    With regard to the use page numbers in this opinion, the Court refers to the page number used on the docket printout, not the numbers used by the Defendants at the bottom of the page.

under Title VII, ADA, § 1981, and EPA. Thompson also joins in the summary judgment motion as to the outstanding § 1981 claim against him. Defendants also assert, even if Alexander does establish a prima facie case, he is unable to show that Defendants' proffered reasons are pretextual.

The Court issued a briefing schedule on July 11, 2008 wherein it ordered Alexander to file his response and evidentiary materials on or before August 1, 2008. *See* Doc. 38. On July 17, 2008, Alexander filed a pleading entitled "Motion to Amend Summary Judgment." *See* Doc. 39. From the content of the document, the lack of any other responsive pleading, and the fact Alexander had no motion for summary judgment of his own to amend, the Court construed the document as the response Defendants' motion for summary judgment. *See* Doc. 43. Prior to the order construing the document as responsive, Defendants also concluded the document was intended as a response to the summary judgment motion and pursuant to the briefing order, timely filed their reply. *See* Doc. 41. Alexander's two page response did little to address the specifics of the motion for summary judgment, but rather reiterated the general allegations in his complaint. *See* Doc. 39. Defendants state in their reply that Alexander did not refute any of the allegations nor did he provide any evidentiary support as required under the Federal Rules of Civil Procedure. *See* Doc. 41.

On August 19, 2008, Alexander filed another document entitled "Reply Brief in Further Support of Plaintiff's Motion to Proceed." *See* Doc. 42. The clerk's office aptly determined the document to be a sur-reply to the motion for summary judgment. In the sur-

reply, Alexander makes slightly more detailed responses to the summary judgment requests and includes some purported evidentiary support. *See id.* As anticipated, Defendants filed a motion to strike the sur-reply on August 22, 2008. *See* Doc. 44. In their motion, Defendants assert the sur-reply was not timely filed and in violation of the briefing order since a motion for leave from the Court was not filed. *Id.* A response was filed by Alexander wherein he simply states he sent the information because it was necessary to answer Defendants' questions. *See* Doc. 45. Defendants filed their reply on September 5, 2008 reiterating their request to strike the sur-reply.

A report and recommendation was issued on September 12, 2008 wherein the Court recommended the motion for summary judgment be granted in its entirety. *See* Doc. 47. On September 25, 2008, Alexander filed his objections which contained evidentiary materials he asserts raise a factual issue. *See* Doc. 48. Defendants filed a motion to strike wherein they request the Court strike Plaintiff's evidence as untimely and irrelevant. The Court denied the motion to strike. After a review of Alexander's submissions, the Court now issues this amended report and recommendation taking into consideration Alexander's submissions.

### IV.   SUMMARY JUDGEMENT STANDARD

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249. Only disputes about the material facts will preclude the granting of summary judgment. *Id.* at 249. A material fact is one "that might affect the outcome of the suit under governing law," and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1277 (11th Cir. 2005) (quoting *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344-45 (11th Cir. 2003)) ("In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'"). Thus, the initial burden of proof rests on the movant. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554; *Gonzalez*, 161 F.3d at 1294. This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be insufficient to permit the non-movant from carrying its burden of proof. *Celotex*, 477 U.S. at 322-23; 106 S.Ct. at 2552-53. The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v.*

*Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (conclusory assertions in absence of supporting evidence are insufficient to withstand summary judgment). The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim, and my not rest upon the mere allegations or denials of the pleadings. FED. R. CIV. P. 56(e); *Johnson v. Board of Regents of University of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted). Thus, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586 106 S.Ct. at 1356 (citations omitted).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *Johnson*, 263 F.3d at 1242-43.  Further, "all justifiable inferences are to be drawn in [that party's] favor."  *Anderson*, 477 U.S. at 255; 106 S.Ct. at 2513; *see also McCormick*, 333 F.3d at 1243 (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment <u>must</u> be granted.  *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.  In other words, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.  *Id*. at 322, 106 S.Ct. at 2552.

In addition, all litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure.  Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party. . .or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

## V.   DISCUSSION AND ANALYSIS

### A.    Title VII claims against Boral Bricks

Under Title VII, it is "an unlawful employment practice for an employer to fail or

refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Alexander asserts a discriminatory discharge claim based on his race and gender in violation of Title VII. *See* Doc. 1 at ¶¶ 11 and 13. With regard to disparate treatment claims under Title VII for improper termination, a plaintiff must prove that the defendant acted with discriminatory purpose. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002) (citation omitted). Specifically, a plaintiff must present either (1) statistical proof of a pattern of discrimination, (2) direct evidence of discrimination, which consists of evidence which, if believed, would prove the existence of discrimination without inference or presumption, or (3) circumstantial evidence of discriminatory intent using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973). *See Holifield*, 115 F.3d at 1561-62. In the case at hand, there is no indication of statistical proof of a pattern of discrimination nor does Alexander present any direct evidence of discrimination. "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations and citations omitted). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Id*. (citations omitted). As a result, this circumstantial evidence

case proceeds under the burden-shifting framework of *McDonnell Douglas* and its progeny.

First, under *McDonnell Douglas*, a plaintiff must create an inference of discrimination by establishing a prima facie case. *Williams*, 303 F.3d at 1293.  Next, should the plaintiff establish a prima facie case, the burden shifts to the defendant to present legitimate, nondiscriminatory reasons for the employment action. *Holifield*, 115 F.3d at 1564.  Although the establishment of a prima facie case shifts the burden of production to the defendant, it does not reallocate the burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747,125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct.1089, 1093, 67 L.Ed.2d 207 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.")).  Once defendant has presented a legitimate, nondiscriminatory reason for its action, the burden shifts back to the plaintiff to produce "sufficient evidence to find that the employer's asserted justification is false" and in reality, a pretext for unlawful intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000).  In other words, at the summary judgment stage, the plaintiff may survive by providing a prima facie case and evidence sufficient for a jury to find that the employer's proffered explanation is false. *Reeves*, 530 U.S. at 147-48, 120 S.Ct. at 2108-09.

### i.    Alexander's Burden to Establish Prima Facie Case

Again, under the *McDonnell Douglas* analysis, Plaintiff must first establish a prima

facie case by showing: (1) he was a member of a protected class; (2) was qualified for the job; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824); *Cuddleback v. Florida Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004). In a reduction in force case, the Eleventh Circuit has adopted a variant of the *McDonnell Douglas* test. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990). The modification is in the second element wherein the plaintiff must show he was qualified for his current position or to assume another position at the time of discharge or demotion. *Id*. Further, "[w]here a particular job position is entirely eliminated for nondiscriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough." *Id*. at 1083 (citations omitted). The burden to establish a prima facie case is not intended to be "onerous," but requires only that the plaintiff establish adequate facts to permit an inference of discrimination. *Holifield*, 115 F.3d at 1562 (citations omitted).

It is undisputed that Alexander's race and gender/sex would be protected under Title VII and that he was adversely impacted by an employment decision. Thus, elements one and three are satisfied. Elements two (as modified for reduction in force cases) and four are in dispute. In this reduction in force case, for element two Alexander must first show he was qualified for his current position. There is no doubt or dispute that Alexander was qualified

for his current position of Shapes Maker.  Therefore the Court looks to whether the position of Shapes Maker was eliminated entirely.  In the motion for summary judgment, Boral Bricks alleges it implemented a reduction in force in Plant 1 Shapes in February 2006.  *See* Doc. 36 at p. 7 ¶ 8.  Boral Bricks states it made a business decision to eliminate the three Shapes employees with the least amount of seniority, which included Alexander.  *Id*. at ¶ 9. Taken in the light most favorable to Alexander, this does not establish for the purposes of summary judgment that all Shapes positions were eliminated.  Thus Boral Bricks cannot show the position of Shapes Maker was eliminated entirely, and consequently, Alexander is not obliged to establish he was qualified for another available open position.  In other words, qualification for his current position is sufficient to establish element two for the purposes of summary judgment.  Therefore, elements one through three of the prima facie case have been met.

As to element four, Alexander must show he was replaced by someone outside the protected class.  The establishment of a prima facie case is not meant to be an onerous burden.  *See Holifield*, 115 F.3d at 1562.  Alexander avers he was replaced by Angela Curley who is a white female.   Therefore, the court will assume Alexander has established all four elements of the prima facie case of discrimination.

### ii.   Defendant's Burden to Show Legitimate Reason for Termination

Alexander's prima facie case raises an inference of discrimination, so the burden of production shifts to Boral Bricks to articulate a legitimate and nondiscriminatory reason for

having terminated Alexander.  *See Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003); *Schweers v. Montgomery Public Schools*, 511 F.Supp.2d 1128, 1137 (M.D. Ala. 2007).  The employer's burden is "exceedingly light."  *Schweers*, 511 F.Supp.2d at 1137 (quoting *Holifield*, 115 F.3d at 1564).  The employer "need only produce evidence that could allow a rational fact finder to conclude that [the employee's] discharge was not made for a discriminatory reason."  *Id*. (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998)).

Boral Brick easily meets their burden when it asserts Alexander was laid off because of a work force reduction.  A reduction in force is a legitimate, non-retaliatory reason to terminate an employee.  *See Standard*, 161 F.3d at 1331-32; *Tidwell v. Carter Products*, 135 F.3d 1422, 1426 (11th Cir. 1998).

### iii.    Alexander's Burden to Show Pretext

The reduction in force is sufficient to shift the burden back to Alexander to prove that the proffered reasons are pretextual for intentionally terminating her because of her age.  *See Schweer*, 511 F.Supp.2d at 1137.  "Because the plaintiff bears the burden of establishing pretext, he must present 'significantly probative' evidence on the issue to avoid summary judgment."  *Young v. Gen. Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988).  Fed. R. Civ. P. 56(e)(2) states "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial."

In this case, the defendant's proffered legitimate business concerns including the reduction in force as the reason to terminate Alexander. In his response Alexander states he has witnesses who will attest to Angela Curley getting the position and also showing that the replacement for her prior position was a white male. *See* Doc. 39 at p. 1. He also states Ms. Curley's position was not posted on the job board. *Id.* "[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions." *Young*, 840 F.2d at 830 (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987)); *accord Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *Schweers*, 511 F.Supp.2d at 1138.

In his attachments to the Objections and Motion for Reconsideration, Alexander attaches the affidavit of Robert Thompson, a white male employee who was also laid off as a result of the reduction in force. In the affidavit Robert Thompson states he was contacted by David Hay, the Regional Human Resources Manager at Boral Bricks, to interview for a warehouse management position. Robert Thompson stated Alexander said he was not contacted about this position.

First, Robert Thompson is the same gender as Alexander which does not have an effect on Alexander's obligation to show pretext as to the gender discrimination claim. As to the race discrimination claim, evidence submitted by Boral Bricks shows that Alexander was contacted about several open positions and invited to interview. *See* Doc. 37, Exhibit

B, Affidavit of David Hay.  Alexander did not contest the evidence in his response or his

objections.  Further, Alexander testified in his deposition that he did not check for job

postings, inquire about open positions, or apply for any other positions. *See* Doc. 37, Exhibit

A, Deposition of Plaintiff at p. 158 line 18 through p. 159 line 3 and p. 160 line 18 through

p. 161 line 15.  Alexander provides little evidence beyond his conclusory statements to rebut

Boral Brick's nondiscriminatory reasons for his termination.  As a result, the Court does not

find Alexander's evidentiary assertions to be sufficiently probative of pretext to withstand

a motion for summary judgment.

**B.     § 1981 Claims of Discrimination**

Alexander also asserts claims under 42 U.S.C. § 1981 ("§ 1981) against Thompson

and Boral Bricks. § 1981 only prohibits discrimination on the basis of race, and thus is solely

applicable to Alexander's racial discrimination claims. *See CBOCS West, Inc. v. Humphries*,

— U.S. — , 128 S.Ct. 1951, 1962 (2008) (United States Supreme Court specifically denies

that § 1981 encompasses any other kind of discrimination and holds "§ 1981 is violated only

when racial discrimination impairs the right to make and enforce contracts."); *Ferrill v.*

*Parker Group, Inc.*, 168 F.3d 468, 473 (11th Cir. 1999) ("§ 1981 proscribes discrimination

solely on the basis of race."); *see also Tucker v. Talladega City Schools*, 171 Fed. Appx. 289,

295 (11th Cir. 2006) (unpublished) ("§ 1981, unlike Title VII, is directed exclusively toward

racial discrimination.").  Any other claims for discrimination asserted by Alexander under

§ 1981 are due dismissal and only § 1981 racial discrimination claims need be addressed

here.

### i.      § 1981 Race Discrimination Claims Against Boral Bricks

The same *McDonnell Douglas* analysis applies to § 1981 claims for discrimination. *See Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1314 n. 6 (11th Cir. 2000) (quoting *Standard*, 161 F.3d at 1330) ("Both [Title VII and § 1981] have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well."); *see also Burstein v. Emtel, Inc*., 137 Fed. Appx. 205, 208 (11th Cir. 2005) (unpublished) ("In cases involving circumstantial evidence of discrimination or retaliation under Title VII and § 1981, courts use the analytical framework set forth in *McDonnell Douglas*.").  The Court concludes supra that the Title VII claims against Boral Bricks cannot survive summary judgment, and the same is true for the § 1981 claims against Boral Bricks.  Thus, the Court need to address them further.

### ii.     § 1981 Claims of Race Discrimination Against Scott Thompson

In the case at hand, as with the claims against Boral Bricks, the same *McDonnell Douglas* analysis applies to the § 1981 claims against Thompson.  As previously noted, the Court does not find Alexander's evidentiary assertions to be sufficiently probative of pretext to withstand a motion for summary judgment.

Alexander's § 1981 claims against Thompson also fail because Alexander cannot show Thompson was involved in the decision to terminate him.  Contrary to Title VII,

"individual employees can be held liable for discrimination under § 1981." *Leige v. Capitol Chevrolet, Inc.*, 895 F.Supp. 289, 293 (M.D. Ala. 1995); *Moss v. W&A Cleaners*, 111 F.Supp.2d 1181, 1188 (M.D. Ala. 2000).  "Supervisors with the capacity to hire and fire or those who can recommend such decisions are subject to liability under § 1981." *Leige*, 895 F.Supp. at 293 (citing *Faraca v. Clements* 506 F.2d 956, 959 (5th Cir. 1975)[3]).  However, supervisors who do not participate in the decision to terminate an employee will not be held liable under a § 1981 discrimination theory.  *See Burstein*, 137 Fed. Appx. at 208.

Beyond Alexander's conclusory assertions about Thompson, the record does not suggest Thompson participated in the decision to terminate Alexander.  In contrast, Defendants attach significant uncontroverted evidence which shows Thompson played no part in the decision to terminate Alexander as part of Boral Bricks' reduction in force.  *See* Doc. 37, Exhibits 2 through 4.  Specifically, David Hay, the Regional Human Resources Manager at Boral Bricks when Alexander was terminated, states Thompson played no role in the reduction in force nor the decision to terminate Alexander.  *See* Doc. 37, Exhibit 2 at ¶ 8, "Affidavit of David Hay."  Thompson's role was limited to telling the employees selected for lay-off.  *Id*. at ¶¶ 8-9.  The affidavit of Steve Markovich, the Plant Manager at Boral Bricks' Phenix City facility, confirms Thompson was merely a messenger.  *See* Doc. 37, Exhibit 3 at ¶¶ 5-7, "Affidavit of Steve Markovich."  Finally, Thompson states in his own

---

[3]        *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

affidavit that he was not involved in the decision to terminate Alexander, but simply notified him of his selection for a reduction in force as directed by Hay and Markovich. *See* Doc. 37, Exhibit 4 at ¶¶ 4-5, "Affidavit of Scott Thompson." In his objections, Alexander simply states "[i]f Scott has little to do with it then why does everyone consults [sic] with him?" *See* Doc. 48 at p. 3. Without evidentiary support, Alexander's conclusory assertions against Thompson are insufficient to withstand summary judgment.

## C.     ADA Claims Against Boral Bricks

The ADA prohibits discrimination against a qualified individual with a disability based on that disability when the discrimination involves the hiring, advancement, termination or conditions of employment of that qualified individual. 42 U.S.C. § 12112(a). Alexander clearly asserts a claim for discrimination as to his termination. *See* Doc. 1, at p. 3. Less clear is whether Alexander attempts to assert a claim for failure to accommodate. *See* Doc. 39 at p. 1. Regardless, both claims fail to survive summary judgment.

### i.     Discrimination

"The burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007) (quoting *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)). To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability. *Id.* at 1255-56; *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835

(11th Cir. 1998).  Boral Bricks argues Alexander cannot establish the first prong of the prima facie case.

"In order to state a claim for wrongful termination under the ADA, a plaintiff must first provide that he has a disability, as defined by the Act."  *Standard*, 161 F.3d at 1327 (citing *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996)).  A disability, for the purposes of the ADA, is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Disability under the first definition above, according to the Supreme Court, involves a three-step analysis.  *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *see also Rossbach v. City of Miami*, 371 F.3d 1354, 1357 (11th Cir. 2004) (citing *Bragdon*).  First, the plaintiff must be impaired.  *Rossbach*, 371 F.3d at 1357.  Next, the life activity impacted must be classified as a major life activity under the ADA.  *Id*.  For guidance as to what constitutes "major life activities," the Eleventh Circuit looks to the regulations interpreting the Rehabilitation Act of 1973, 87 Stat. 361, as amended, 29 U.S.C. § 701, *et seq*. (2000).  *Id*. The regulations define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  45 C.F.R. § 84.3(j)(ii).[4]  If not specifically enumerated in

---

[4]    There are two potential sources for guidance in the definition of disability - the regulations interpreting the Rehabilitation Act and the EEOC regulations interpreting the ADA at 29 C.F.R. § 1630.2.  *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 193, 122 S.Ct. 681, 689, 151 L.Ed.2d 615 (2002).  "Because Congress drew the ADA's definition of disability almost verbatim

this list, the activity must be "significant" to everyday life.  *Bragdon*, 524 U.S. at 638, 118 S.Ct. at 2205.  Finally, the Court must determine whether the impairment substantially limits that life activity.  *Rossbach*, 371 F.3d at 1357.

Alexander alleges he is a disabled veteran with a seventy percent (70%) disability.  *See* Doc. 1 at p. 3 ¶ 12.  He does not specify in this pleadings what his disabilities are, but instead simply attaches various documents from the Department of Veterans Affairs.  *See* Doc. 42, attachments at p. 4-16.  It is not the Court's job to rifle through the various documents to glean evidence.  *See Foster v. Mid State Land & Timber Co, Inc*., 2007 WL 3287345, *11 (M.D. Ala. 2007) ("It is not the Court's function to weed through the summary judgment submissions in search of evidence to support [plaintiff's] position.").  However, a brief review of the documents confirms Alexander has a 70% disability rating which relates to knee and ear problems.  *See* Doc. 42 at p. 14.  Beyond this minimal information, the record before the Court is very limited.  The Court nonetheless assumes for the purposes of summary judgment that Alexander has an impairment.  However, "the mere existence of a physical impairment does not constitute a disability under the ADA; the impairment must substantially limit a major life activity."  *Id*. at 1328 (citing *Gordon*, 100 F.3d at 911).

---

from the definition of 'handicapped individual' in the Rehabilitation Act, the Supreme Court has stated that it is proper to construe that term in accordance with pre-existing regulatory interpretations under the Rehabilitation Act."  *Rossbach*, 371 F.3d at 1357 n. 4 (citing *Williams*, 534 U.S. at 193-94, 122 S.Ct. at 689).  While the persuasive authority of the EEOC regulations is less clear, it is still appropriate to look to them for interpretive guidance as to Subsection A of the ADA.  *Id*. (citations omitted).

Alexander does not specifically articulate the impairment of any major life activities.  From his knee and ear problems, the Court can only assume the major life activities would be manual tasks, walking, hearing, and working.   As a matter of law, Alexander fails to demonstrate that he is substantially limited in the major life activities of performing manual tasks, walking, hearing, and working.  While Alexander states he was in pain, he does admit he did not complain about it to his employer.  *See* Doc. 42 at p. 2-3.  Further, vague assertions and conclusory statements are insufficient to establish a substantial limitation of a major life activity.  Therefore, Alexander fails to establish an actual impairment which would satisfy the first prong of the *McDonnell Douglas* analysis.

An individual who "[h]as a physical or mental impairment that does not substantially limit major life activities but is treated by [an employer] as constituting such limitation" is also considered disabled under the ADA.  29 C.F.R. § 1630.2(l); *see also Rossbach*, 371 F.3d at 1359. Under this theory, a plaintiff is considered disabled not because he actually is disabled, but because his employer treats him as having a disability as defined by the statute. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230 (11th Cir.1999).  In other words, the employer must perceive the impairment as involving a major life activity and substantially limiting and significant.  *Rossbach*, 371 F.3d at 1360.  Alexander fails under both prongs of the inquiry.

Alexander states Boral Bricks knew of his knee problems, but that he did not complain nor did he request any accommodations.  *See* Doc. 42 at p. 3; *see also* Doc. 37, Exhibit 1,

"Plaintiff's Deposition" at p. 186 line 20 through p. 187 line 3.  Moreover, Alexander admits he was capable of performing his job.  Doc. 37, Exhibit 1, "Plaintiff's Deposition" at p. 183 line 12 through p 184 line 20.  While Alexander states Thompson was aware of his occasional difficulties, there is not sufficient evidence in the record that Boral Bricks perceived him to be impaired in the major life activity of working.  At best, he merely shows Boral Bricks might have been aware of him having some physical difficulties on occasion, which is insufficient as a matter of law.  Summary judgment is also due to be granted as to the ADA discrimination claim.

### ii.   Failure to accommodate

It appears Alexander attempts to assert a claim for failure to accommodate though no specifics are provided in the Complaint.  *See* Doc. 1 generally; Doc. 39 at p. 1. Discrimination under the ADA includes an employer not making reasonable accommodations for a qualified employee's known disability. 42 U.S.C. § 12112(b)(5)(A).  Accordingly, the ADA imposes an affirmative duty on employers to provide such reasonable accommodations unless doing so would pose an undue hardship. *Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996).

There is some legal ambiguity as to whether the familiar *McDonnell Douglas* framework applies to failure to accommodate cases.  *See Nadler v. Harvey*, 2007 WL 2404705 (11th Cir. 2007) (unpublished); *see also Jones v. Georgia Dep't of Corr.*, 2008 WL 779326 (N.D. Ga. 2008) (discussion on legal ambiguity since Eleventh Circuit did not

publish *Nadler* decision).  The purpose of the *McDonnell Douglas* analysis is to determine the sufficiency of intentional discrimination claims.  *Jones*, 2008 WL 779326 at *5 (citing *Hicks*, 509 U.S. at 506, 113 S.Ct. at 2746).  However, a discrimination claim based on a failure to provide reasonable accommodations does not require discriminatory intent. *Nadler*, 2007 WL 2404705 at *8.  Rather, the failure to provide reasonable accommodations is a *per se* violation of the ADA, regardless of intentions.  *Jones*, 2008 WL 779326 at *5. "In other words, a claim that an employer failed to perform a statutory duty, such as the ADA's requirement to provide reasonable accommodations to qualified employees, does not involve a determination of whether that employer acted, or failed to act, with discriminatory intent."  *Id*.  The Eleventh Circuit in its unpublished decision joined with various other circuits to hold that the *McDonnell Douglas* burden-shifting framework, "while appropriate for determining the existence of disability discrimination in disparate treatment cases, is not necessary or useful in determining whether a defendant has discriminated by failing to provide a reasonable accommodation."  *Nadler*, 2007 WL 2404705 at *9 (citations omitted). As the *Nadler* case is unpublished, it is not binding and merely provides persuasive authority on the subject. However, this Court agrees that the *McDonnell Douglas* analysis is inapplicable for a failure to accommodate claim.  Regardless of whether this Court applies *McDonnell Douglas*, Alexander has not shown he is disabled or otherwise qualified within the meaning of the Act and therefore his reasonable accommodation claims also fail and summary judgment is due to be granted.

D.      **EPA Claims Against Boral Bricks**

It also appears that Alexander assert a claim under the EPA though no specifics are provided in the Complaint beyond vague assertions relating to his wages and the wages of other Boral Bricks employees.  *See* Doc. 1 at p. 3 ¶¶ 9-10.  There is no reference to the EPA by name or by citation.  However, Alexander does later reference this cause of action in other pleadings, so the Court will address it here.  *See* Doc. 39 at p. 1-2; Doc. 42 at p. 3-4.

The EPA prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work.  29 U.S.C. § 206(d)(1).  Thus, a prima facie case of an EPA violation is shown if an employer pays different wages to employees of opposite sexes for equal work on jobs requiring "equal skill, effort, and responsibility, and which are performed under similar working conditions."  *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974)); *see also Nixon v. Autauga County Bd. of Educ.*, 273 F.Supp.2d 1292, 1298 (M.D. Ala. 2003) ("Thus, establishing the prima facie case requires comparison of the plaintiff's work and earnings to that of a person of the opposite sex."). Once the employee presents a prima facie case, to avoid liability the employer must prove by a preponderance of the evidence, that the pay differences are based on "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).  The burden of these affirmative defenses rests on the employer and is a "heavy

one" because the "defendants must show that the factor of sex provided no basis for the wage differential." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir. 1994). If the defendant fails to meet this burden, the court must enter judgment for the plaintiff. *Miranda v. B & B Cash Grocery Store*, 975 F.2d 1518, 1533 (11th Cir. 1992). When the defendant overcomes the burden, the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential. *Schwartz v. Florida Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991). If the plaintiff is able to create an inference of pretext, then the issue must be reserved for trial. *Irby*, 44 F.3d at 954.

In the case with Alexander, he is unable to meet the prima facie case because he does not show that he was paid less than female employees performing substantially similar jobs. His argument rests solely on the fact he was paid by the hour while others in similar positions were on salary. *See* Doc. 42 at p. 3-4. Alexander further states he bases his argument in part on the fact his male supervisor was paid at a higher rate. *Id*. at p. 4. Further, Alexander specifically states in his reconsideration reply that "I never said that I was discriminated for equal pay due to my race and gender. I said that I was discriminated for equal pay due to my every day duties in comparison to other Supervisors and Shipping Managers who were salaried employees." *See* Doc. 55 at p. 3. Thus, Alexander himself states his EPA claim has nothing to do with gender/sex. Consequently, Alexander cannot establish a prima facie case and summary judgment must be granted in favor of Boral Bricks.

**E.      Motion to Strike Sur-reply**

Because Defendants' Motion for Summary Judgment is due to be granted, there is no need to address Defendants' Motion to Strike Plaintiff's Sur-reply as it is rendered moot.

## VI.  CONCLUSION

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that:

(1)      *Defendants' Motion for Summary Judgment* (Doc. 35) be **GRANTED** .

(2)      This action be **DISMISSED with prejudice**.

(3)      *Defendants' Motion to Strike Plaintiff's "Reply Brief."* (Doc. 44) be **DENIED as moot**..

(4)      Plaintiff's Motion for Reconsideration (Doc. 48) be **DENIED as moot** because the evidentiary materials have now been considered and an Amended Report and Recommendation has been issued.

(5)      Any other outstanding motions be **DENIED as moot**.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to the said Recommendation not later than **November 12, 2008**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the

Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

      DONE this 29th day of October, 2008.

                    /s/ Terry F. Moorer
                    TERRY F. MOORER
                    UNITED STATES MAGISTRATE JUDGE